IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELLA L. HUSSEY, )
 )
        Plaintiff, )
 )
v. ) Case No. 08-2008-JPO
 )
GRIFFIN WHEEL COMPANY, INC., )
 )
        Defendant. )

## **MEMORANDUM AND ORDER**

The plaintiff, Ella L. Hussey, brings this employment discrimination case against the defendant, Griffin Wheel Company, Inc., under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). This case is now before the court[1] on defendant's motion for summary judgment **(doc. 24)**. The instant motion has been fully briefed (*see* docs. 25, 30, & 33). For the reasons discussed below, the motion is granted and summary judgment is entered for defendant.

## I. Facts[2]

Defendant is a company located in Kansas City, Kansas, that makes steel wheels for trains. Plaintiff, who is African-American, began working for defendant on April 8, 1998.

---

[1] On July 9, 2008, by consent of both parties, this case was reassigned for disposition from Hon. Kathryn H. Vratil, U.S. District Judge, to the undersigned U.S. Magistrate Judge, James P. O'Hara (*see* doc. 16).

[2] The court construes the facts in the light most favorable to plaintiff as the nonmoving party pursuant to Fed. R. Civ. P. 56. Immaterial facts and those not properly supported by the record are omitted. When necessary, additional facts are included in the analysis section of this memorandum and order.

Plaintiff primarily worked in the Molding Department where molten steel is poured into molds to make train wheels. Between the start of plaintiff's employment and September 21, 2005, defendant issued her nine disciplinary warnings related to her work performance. On January 4, 2006, defendant issued plaintiff a tenth disciplinary warning based on her poor work performance in pouring steel into molds. The Disciplinary Action Notice issued on that date stated that it was the "final written warning" and that the "next occurrence will result in suspension pending review."[3] Then, on August 12, 2006, plaintiff's employment was temporarily suspended based on allegations that she slapped a co-worker, Jerry Ratliff, in violation of defendant's workplace violence policy and performance expectations. Plaintiff denied slapping Mr. Ratliff. Nonetheless, defendant investigated the incident and concluded that plaintiff's "behavior led to the confrontation with Jerry Ratliff, during which one witness observed [plaintiff] slap him."[4] As a result, on August 21, 2006, plaintiff and defendant entered into a "Last Chance Agreement," which stated: "Any further conduct or behavior in violation of the Kansas City Performance Expectations or the company's Workplace Violence Policy will result in immediate suspension pending termination of employment."[5]

On January 8, 2007, plaintiff was involved in an incident involving run-out of excess molten steel. Plaintiff was working as a "pourer," operating equipment that poured steel into molds, when steel overflowed a mold and "went all over the pouring station and

---

[3] Ex. F to doc. 25.

[4] Ex. G to doc. 25.

[5] *Id.*

everywhere."[6] After steel is poured, it is the pourer's responsibility to ensure that four clamps holding the mold in place are raised before the mold is moved to another station. On the day in question, after the steel spill was contained, plaintiff pressed a button which should have released the clamps. Two of the clamps holding the mold failed to release, however, and plaintiff attempted to move the mold before realizing the clamps' failure.[7]

On January 15, 2007, defendant terminated plaintiff's employment. In the letter of termination,[8] defendant stated that, due to plaintiff's actions on January 8, 2007, the clamps on the mold were bent, "causing significant expense and lost production time." The letter further noted the January 4, 2006 final written warning and the "multiple work performance write-ups in [plaintiff's] file." The letter did not specifically reference the Last Chance Agreement.

Plaintiff claims defendant terminated her employment because of her race in violation of Title VII and Section 1981. Plaintiff asserts that similarly situated white employees were treated more favorably than plaintiff. Defendant asserts it terminated plaintiff's employment because of plaintiff's poor work performance, violation of defendant's policies set forth in a document titled "Kansas City Team Performance Expectations," and plaintiff's history of disciplinary warnings.

---

[6] Transcript of Plaintiff's deposition, Ex. E to doc. 25 at 160.

[7] Plaintiff believes a mechanical problem with the clamps prevented them from releasing. When defendant investigated the incident, it found no mechanical problem with the pouring-station machinery.

[8] Ex. H to doc. 25.

II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact," and it is "entitled to a judgment as a matter of law."[9] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[10] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[11] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[14]

Once the movant has met his initial burden, the burden shifts to the nonmoving party

---

[9] Fed. R. Civ. P. 56(c).

[10] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[12] *Id.* (citing *Anderson*, 477 U.S. at 248).

[13] *Id.* at 670–71.

[14] *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

to "set forth specific facts showing that there is a genuine issue for trial."[15] The nonmoving party may not simply rest upon his pleadings.[16] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[17] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[18]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[19]

### III. Analysis

Plaintiff claims defendant discriminated against her on the basis of her race in violation of Title VII and Section 1981. Title VII prohibits an employer from terminating any individual because of "race, color, religion, sex, or national origin."[20] Section 1981 "provides equal rights to make and enforce contracts and to the benefits of laws for the

---

[15] *Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

[16] *Anderson*, 477 U.S. at 256.

[17] *Adler*, 144 F.3d at 671.

[18] *Id.*

[19] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[20] 42 U.S.C. § 2000e-2(a)(1).

security of persons and property."[21] In both Title VII and Section 1981 cases, the court applies the *McDonnell Douglas*[22] burden-shifting approach where, as here, there is no direct evidence of discrimination.[23] Under this approach,

> the plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Once this is done, the presumption of discrimination established by the prima facie showing "simply drops out of the picture." The plaintiff then carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis . . . . The plaintiff may do so by showing that the proffered reason is pretextual.[24]

A. Prima Facie Case of Discrimination

Plaintiff may establish a prima facie case of discriminatory discharge by presenting evidence establishing a genuine issue of fact that "(1) [s]he was a member of a protected class; (2) [s]he was qualified and satisfactorily performing [her] job; and (3) [s]he was terminated under circumstances giving rise to an inference of discrimination."[25]

Here, it is undisputed that plaintiff is African-American and is therefore a member of a protected class. Defendant argues, however, that plaintiff cannot establish the second and

---

[21] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (quoting *Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006)).

[22] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[23] *Antonio*, 458 F.3d at 1181. The elements of plaintiff's claims in this case are the same whether those claims are analyzed under Title VII or Section 1981. *See Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir. 2005).

[24] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124–25 (10th Cir. 2005) (citations omitted).

[25] *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

third prongs of the prima facie test.

Under the second prong of the prima facie test, plaintiff must show that she was qualified for and satisfactorily performing her job. Defendant does not dispute that plaintiff was qualified for her position, but argues that plaintiff cannot establish that she was satisfactorily performing her job. Defendant notes the ten disciplinary warnings that plaintiff received because of her poor work performance, the Last Chance Agreement arising from the alleged slapping of a co-worker, and the incident on January 8, 2007 involving the steel run-out and bent mold clamps.

The Tenth Circuit has ruled that it is relatively easy for plaintiffs to meet this prong of the prima facie test. A plaintiff need only present "credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, or by evidence that she had held her position for a significant period of time."[26] Where, as here, a defendant asserts that the plaintiff was not satisfactorily performing her job and also asserts that the plaintiff's deficient performance was the defendant's legitimate, nondiscriminatory reason for discharging the plaintiff, the court does not analyze the defendant's assessment of the plaintiff's performance at the prima facie stage.[27] To do so would compress the *McDonnell Douglas* analysis and frustrate a plaintiff's

---

[26] *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (internal citations omitted).

[27] *See Day v. Kraft Foods N. Am.*, 490 F. Supp. 2d 1148, 1154–55 (D. Kan. 2007) ("This court, relying on established Tenth Circuit precedent, has repeatedly declined to analyze an employer's assessment of the plaintiff's performance at the prima facie stage where the employer (like defendant here) also asserts that the plaintiff's alleged deficient

ability to establish that a defendant's reason for termination was pretextual.[28]

Plaintiff has testified that her work was satisfactory and that her actions did not cause the bent mold clamps. She further asserts that her nearly nine-year employment with defendant demonstrates satisfactory performance.[29] Under the guidance set forth in *MacDonald*, the court finds that, given these two considerations, plaintiff has satisfied the second prong of the prima facie test.

The third prong of the prima facie test requires plaintiff to show that her termination occurred under circumstances giving rise to an inference of discrimination.

> Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive, including: actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, . . . or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified. A plaintiff might also rely . . . more generally, upon the timing or sequence of events leading to plaintiff's termination.[30]

In this case, plaintiff alleges that defendant gave preferential treatment to white

---

performance was the employer's legitimate, nondiscriminatory reason for taking the adverse employment action.").

[28] *See MacDonald*, 941 F.2d at 1119–21; *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n. 11 (10th Cir. 1999), implicitly overruled on other grounds as recognized in *Boyer v. Cordant Tech.*, 316 F.3d 1137, 1140 (10th Cir. 2003).

[29] *See English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) ("Although the district court noted some dispute over the quality of his work, it correctly found that the extensive period of time that English held his position at least entitles him to an inference of satisfactory performance sufficient to survive summary judgment.").

[30] *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (internal quotations and citation omitted).

employees. In support, she presents the disciplinary records of two white employees, whom she alleges are similarly situated but were not terminated. The court notes that, while the Tenth Circuit has ruled that a plaintiff is not required to compare herself to similarly situated employees in order to establish a prima facie case, the Circuit has nonetheless left open this path to satisfying the third prong.[31] Here, the only factor that plaintiff relies on to establish an inference of discrimination is defendant's treatment of persons outside the protected class. Thus, the court will consider the treatment of similarly situated employees at this point in its *McDonnell Douglas* analysis.

Plaintiff asserts that the fact that she was terminated when white employees who have incurred disciplinary warnings at a faster rate are still employed by defendant raises an inference of discrimination. In this regard, plaintiff first submits the employment records of Mr. Ratliff, a white employee who began working for defendant on March 8, 1999. Between the start of Mr. Ratliff's employment and January 8, 2008, defendant issued thirteen disciplinary warnings—seven based on his work performance and six related to attendance issues. In a similar nearly-nine-year period, defendant issued plaintiff twelve disciplinary warnings (including her suspension related to the January 8, 2007 incident)—eleven based on work performance and one based on a violation of defendant's workplace violence policy.

---

[31] *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (ruling that although the requirement that a plaintiff show circumstances giving rise to an inference of discrimination "may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this"); *see also EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 n.6 (10th Cir. 2000); *Hurde v. Jobs Plus-Med*, 299 F. Supp. 2d 1196, 1210 & n.19 (D. Kan. 2004).

Plaintiff also submits the employment records of Sherry Strutton, a white employee who began working for defendant on April 24, 2006. Between the start of Ms. Strutton's employment and September 23, 2008 (roughly a two-and-a-half-year period), defendant issued five disciplinary warnings—three based on her work performance and two related to attendance issues.

The court questions whether Mr. Ratliff and Ms. Strutton are truly similarly situated to plaintiff (as discussed below in the pretext analysis). In any event, the court finds that the evidence submitted by plaintiff is enough to carry her prima facie burden. That is, the Tenth Circuit has stressed that a plaintiff bears only a "*de minimis*" burden of showing circumstances giving rise to an inference of discrimination.[32] Construing all inferences from the disciplinary records in the light most favorable to plaintiff, the court concludes that plaintiff has satisfied this light burden.[33]

Plaintiff has established a prima facie case that the termination of her employment was impermissibly based on her race.

B.      Nondiscriminatory Reason for Termination

Because plaintiff has established a prima facie case of discriminatory discharge, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason

---

[32] *Plotke*, 405 F.3d at 1101.

[33] *Cf. Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (ruling that "an employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors").

for terminating plaintiff's employment. Defendant claims it terminated plaintiff's employment because her performance on January 8, 2007 (involving movement of a mold before two clamps had released) did not meet the Kansas City Performance Expectations (as required by the Last Chance Agreement) and because she had a history of disciplinary warnings. As these reasons are not "facially prohibited by Title VII" or by Section 1981, defendant has satisfied its burden.[34]

### C. Pretext

Because defendant has satisfied its burden of articulating legitimate, nondiscriminatory reasons for the termination, the burden shifts back to plaintiff to show that there is a genuine issue of material fact as to whether defendant's proffered reasons are pretextual.[35] "This burden is not onerous . . . it is also not empty or perfunctory."[36] Generally, a plaintiff makes a showing of pretext in one of three ways: (1) with evidence that defendant's stated reason for the termination was false, i.e., unworthy of belief; (2) with evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) with evidence that defendant treated plaintiff differently from other similarly situated, non-African American employees who violated rules of comparative seriousness.[37]

---

[34] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (quoting *EEOC v. Flasher, Co.*, 986 F.2d 1312, 1317 (10th Cir. 1992)).

[35] *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006).

[36] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323–24 (10th Cir. 1997).

[37] *Salguero*, 366 F.3d at 1175.

Plaintiff makes three arguments in support of her claim that defendant's reasons for terminating her employment are pretextual. First, plaintiff argues that the reasons given by defendant for the termination changed over time, and are now "inconsistent and self-contradictory." Second, plaintiff asserts that the termination was contrary to defendant's progressive discipline policy. Third, plaintiff argues that similarly situated white employees were not discharged for equally egregious conduct. The court will address each argument in turn, but will consider the evidence as a whole in determining whether plaintiff has met her burden of showing pretext.[38]

1. Inconsistent Reasons Given for Termination

Plaintiff asserts that defendant's stated reasons for terminating her employment changed over time. Specifically, plaintiff notes that defendant's January 18, 2007 letter states she was terminated for: her actions on January 8, 2007 that caused the mold clamps to bend, resulting in the "loss of production, and thousands of dollars in repairs;" the fact that "a final written warning for poor work performance" had been issued to her on January 4, 2006; the "multiple poor work performance write-ups in [her] file;" and, relatedly, the "pattern of lack of attentiveness to [her] work and poor work performance."[39] Plaintiff compares these reasons to those that defendant proffered to the Equal Employment Opportunity Commission (EEOC) in a letter dated August 13, 2007. In response to

---

[38] *See Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) ("When assessing whether plaintiff has made an appropriate showing of pretext, we must consider the evidence as a whole.").

[39] Ex. H to doc. 25.

plaintiff's administrative charge of discrimination, defendant stated that it terminated plaintiff's employment "for poor work performance," and specifically noted that plaintiff violated the "Kansas City Team Performance Expectations" and "the terms of her 'Last Chance Agreement.'"[40] Plaintiff asserts that the separate reasons given by defendant for the termination are "inconsistent and self-contradictory."[41]

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[42] When an employer's stated reasons for termination shift over time, pretext may be indicated.[43] "Pretext is not shown," however, "if the employer does not give inconsistent reasons, but instead merely elaborates on the initial justification for termination."[44]

The court has carefully examined defendant's termination letter written to plaintiff and defendant's letter to the EEOC in response to their investigation into this matter. The court disagrees with plaintiff's conclusory allegation that the reasons given in the two letters for her termination are inconsistent and contradictory. Both letters discuss plaintiff's actions

---

[40] Ex. 4 to doc. 30.

[41] Doc. 30 at 14.

[42] *Morgan*, 108 F.3d at 1323 (quotations omitted).

[43] *Ramsey v. Labette County Med. Ctr.*, 297 Fed. Appx. 730, 734 (10th Cir. 2008).

[44] *Id.*

on January 4, 2007 involving the bent mold clamps; the letter to the EEOC did so in greater detail. Both letters discussed the multiple "poor work performance" write-ups in plaintiff's personnel file, with the letter to the EEOC specifically listing twelve disciplinary actions. Although plaintiff asserts that "[t]he omission of the last chance agreement from the termination letter is significant,"[45] she does not explain *why* she contends the omission is significant. It is true that defendant expanded upon its stated reasons for the termination by specifically mentioning the Last Chance Agreement in its letter to the EEOC. But this "new" explanation in no way contradicted the original explanation that was provided plaintiff. Because "[t]he asserted variances do not demonstrate that [defendant's] proffered reasons are so weak, implausible, inconsistent, incoherent, or contradictory that a rational jury could find them unworthy of belief,"[46] pretext has not been shown on this basis.

2. Termination Contrary to Written Policy

Plaintiff next attempts to show pretext by demonstrating that the termination of her employment was contrary to defendant's progressive discipline policy as set forth in defendant's "Kansas City Team Performance Expectations" policy.[47] The policy states that,

---

[45] Doc. 30 at 15.

[46] *Ramsey*, 297 Fed. Appx. at 734.

[47] Plaintiff notes that there are two versions of this policy—one bearing an effective date of December 1, 2001 and one that is undated. She asserts that under the December 1, 2001 version, she should not have been terminated. Defendant counters that because its actions "complied with the terms of both policies, it does not matter which policy was applicable at the time of Ms. Hussey's termination." Doc. 33 at 18 n.7. Viewing the facts in the light most favorable to plaintiff, the court will assume that the December 1, 2001 version of the policy was in effect.

typically, the following four steps are taken progressively:

1) A "Discussion Planner" is issued.

2) A "Disciplinary Action Notice" is issued.

3) "Suspension Pending Review" and investigation by management.

4) "Based on the results of the investigation in Step (3) two possible decisions are rendered: (a) conditional reinstatement or (b) termination of employment."[48]

The policy further states, "Actions taken under Steps (1) and (2) above will typically not be considered for further disciplinary reasons after twelve (12) months have elapsed since an action has been taken for a particular expectation."[49]

Plaintiff argues that "none of [her] prior Discussion Planner or Disciplinary Action Notice events should have been considered when the company reviewed the event of January 8, 2007 [because] . . . [t]he next preceding event on January 4, 2006, would have been aged-out by the policy."[50]

Plaintiff's argument fails to account for the fact that her progressive discipline had already reached Step (4) by January 8, 2007. Although the last Disciplinary Action Notice plaintiff received was on January 4, 2006, she had been suspended pending review (Step (3)) on August 12, 2006 in connection with allegations that she slapped Mr. Ratliff. She then was conditionally reinstated (Step (4)) on August 21, 2006 when the parties entered into the Last Chance Agreement. By signing the Last Chance Agreement, plaintiff acknowledged that

---

[48] Ex. 4 to doc. 30 at 12.

[49] *Id*. at 12–13.

[50] Doc. 30 at 15.

"[a]ny further conduct or behavior in violation of the Kansas City Performance Expectation . . . will result in immediate suspension pending termination of employment."[51]

Therefore, the termination of plaintiff's employment following the incident on January 8, 2007 was in no way contrary to the terms of the Kansas City Team Performance Expectations policy (or the Last Chance Agreement). Plaintiff has shown no facts from which a jury could reasonably infer that defendant's discipline decisions were a pretext for race discrimination. Nor has plaintiff presented any evidence from which a jury could reasonably infer that defendant's progressive discipline policy was selectively applied based on race.

3. Similarly Situated Employees Not Terminated

As discussed in Section III(A) above, plaintiff has submitted the employment records of Mr. Ratliff and Ms. Strutton, both white employees who also worked in the Molding Department, in support of her argument that defendant treated her differently from other similarly situated, non-African American, employees who violated rules of comparative seriousness. The court has found that this evidence was enough to satisfy plaintiff's *de minimis* burden in making a prima facie case of race discrimination. Regardless, the court does not find that the evidence satisfies plaintiff's burden to show that defendant's proffered reason for termination was a pretext for illegal discrimination.

The evidence before the court simply does not support the assertion that Mr. Ratliff and Ms. Strutton had disciplinary records equal to or worse than plaintiff's. As the court

---

[51] Ex. G to doc. 25.

noted above, the evidence indicates that defendant issued Mr. Ratliff thirteen disciplinary warnings—seven based on work performance and six related to attendance issues—in roughly a nine-year period (between March 8, 1999 and January 8, 2008). Defendant issued Ms. Strutton five disciplinary warnings—three based on work performance and two related to attendance issues—in roughly a two-and-a-half-year period (between April 24, 2006 September 23, 2008). Defendant did not terminate either Mr. Ratliff or Ms. Strutton. In comparison, defendant issued plaintiff twelve disciplinary warnings (including her suspension related to the January 8, 2007 incident)—eleven based on plaintiff's work performance and one based on a violation of defendant's workplace violence policy—in roughly a nine-year period (between April 8, 1998 and January 15, 2007). Defendant did terminate plaintiff.

Six of Mr. Ratliff's disciplinary warnings and two of Ms. Strutton's disciplinary warnings were related to attendance issues, not work performance, and thus were governed by defendant's absenteeism program, not the Kansas City Performance Expectations.[52] These violations of the absentee policy do not provide a helpful comparison to plaintiff's case (as none of plaintiff's disciplinary warnings fell under the absentee policy) and will not be considered.[53] The relevant comparison is that Mr. Ratliff incurred seven performance-

---

[52] *See* Ex. 4 to doc. 30 at 12.

[53] *See Rivera v. City and County of Denver*, 365 F.3d 912, 923 (10th Cir. 2004); *see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1171 n.11 (10th Cir. 2007) (ruling that to demonstrate pretext through differential treatment, the plaintiff must show that the employees violated rules of comparable seriousness).

related warnings, while plaintiff incurred eleven performance-related warnings, over a roughly nine-year period. Ms. Strutton incurred only three performance-related warnings—far less than plaintiff. While the *rate* at which Ms. Strutton and plaintiff have accumulated performance-related warnings is near equal, this does not indicate that the two are similarly situated given the greater number of warnings that plaintiff received before the decision was made to terminate her employment.

In stark contrast to plaintiff's situation, the uncontroverted evidence is that neither Mr. Ratliff nor Ms. Strutton reached the fourth level of progressive discipline—conditional employment following suspension of employment. As noted above, at the time of plaintiff's termination, she was subject to a Last Chance Agreement following allegations that she slapped Mr. Ratliff.[54] Nothing in the record suggests that Mr. Ratliff or Ms. Strutton had signed similar agreements. In short, the evidence indicates that plaintiff's disciplinary history is more extensive than either Mr. Ratliff's or Ms. Strutton's. Differences in treatment that are explained by a nondiscriminatory motive will not sustain a claim of pretext.[55]

Construing all facts and inferences in a light most favorable to plaintiff, the evidence nonetheless demonstrates that plaintiff's conduct was more severe and culpable than Mr. Ratliff's and Ms. Strutton's. Courts "afford substantial latitude to employers in making discipline related decisions, and are reluctant to act as a super personnel department that

---

[54] The fact that plaintiff denies slapping Mr. Ratliff is not material, as it is undisputed that plaintiff entered into (and was subject to the terms of) the Last Chance Agreement.

[55] *See Swackhammer*, 493 F.3d at 1168.

second guesses employers' business judgments."[56] Plaintiff's allegations of disparate treatment do not suffice to show pretext.

The court additionally notes that Ms. Strutton does not appear to meet the definition of a similarly situated employee, as defined by the Tenth Circuit. In the pretext context, the Tenth Circuit has stated that a similarly situated employee is "one who 'deals with the same supervisor and is subject to the same standards governing performance and discipline.'"[57] Plaintiff has not alleged that either Mr. Ratliff or Ms. Strutton had the same supervisor as plaintiff. The court has looked at the employment records of all three individuals and, though it is difficult to decipher the names of supervisors from their signatures on disciplinary warnings, it is clear that the supervisor signatures on disciplinary warnings issued to plaintiff differ from the supervisor signatures on disciplinary warnings issued to Ms. Strutton. Thus, it does not appear that Ms. Strutton is similarly situated to plaintiff.

To show pretext, plaintiff must provide specific facts that prove defendant's reasons for her termination were pretextual.[58] Even viewing all the facts in this case as a whole, the court finds that plaintiff has "failed to produce any evidence from which a reasonable inference could be drawn that [defendant's] proffered reasons were pretextual."[59] Summary judgment in favor of defendant is thus warranted.

---

[56] *Salguero*, 366 F.3d at 1177 (internal quotations and citation omitted).

[57] *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) (quoting *Kendrick*, 220 F.3d at 1232).

[58] *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

[59] *Salguero*, 366 F.3d at 1176 (internal quotations and citation omitted).

V. Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Defendant's motion for summary judgment **(doc. 24)** is granted.

2. This case is dismissed, with prejudice, with costs assessed against plaintiff.

Dated this 16th day of November, 2009, at Kansas City, Kansas.

                                         s/James P. O'Hara
                                         James P. O'Hara
                                         U.S. Magistrate Judge